UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 3:22-cv-00821- MMH-MCR

Eriel Mason and Kyla S. Couthen,
and other similarly situated individuals,

      Plaintiffs,

v.

Protective Enterprises Public Safety, LLC,
and Marcus D. Williams, individually,

      Defendants.
_____/

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE

The Parties, by and through the undersigned counsel, hereby submit their Settlement Agreement (Exhibit 1) to the Court for approval and request that the Court approve the Settlement Agreement and dismiss this action with prejudice for the following reasons:

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On July 31, 2022, Plaintiffs filed a two-count collective action Complaint against Defendants alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, for failure to pay minimum wages and retaliatory constructive discharge. *See* ECF No. 1 ("Complaint"). According to the allegations in the Complaint, Plaintiff Eriel Mason worked as a non-exempted full-time dispatcher from January 12, March 17, 2022, or 9 weeks and Plaintiff Kyla S. Couthen as a non-

exempted full-time dispatcher from February 11, 2022, to March 17, 2022, or 5 weeks.

The Parties have settled this action and submit this Motion seeking approval of their proposed Settlement Agreement, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), and dismissal of the action with prejudice.

## II. APPLICABLE LEGAL STANDARDS

Section 206 of the FLSA establishes the federally mandated minimum hourly wage and Section 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. 29 U.S.C. §§ 206, 207. An employer who violates the FLSA is liable to its employee for any unpaid minimum and/or overtime wages, as well as an equal amount in liquidated damages. 29 U.S.C. § 216(b). The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived" between employers and employees. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981). Nevertheless, there are two ways in which claims arising under the FLSA can be settled or compromised by employees: (1) if the payment of unpaid minimum wage is supervised by the Secretary of Labor; or (2) in a private lawsuit brought by an employee against his or her employer, if the parties present the district court with a proposed settlement agreement and the district court enters a stipulated judgment after scrutinizing the settlement for fairness. *See* 29 U.S.C. 216(c); *Lynn's*, 679 F.2d at 1352-53.

The Eleventh Circuit has held that the compromise of FLSA claims is allowed

under the following circumstances:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's*, 679 F.2d at 1354. Thus, an employee may compromise a claim if the district court determines that the compromise "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355. As stated in *Lynn's Foods*, "[i]f a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Foods*, 679 F.2d at 1354. Courts are to review FLSA settlements with a strong presumption in favor of finding a settlement fair. *See Bonetti v. Embarq Management Co.,* 715 F.Supp.2d 1222, 1227 (M.D. Fla. 2009) ("[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee (*i.e.*, "internal" factors), and whether the settlement frustrates the purpose of the FLSA (*i.e.*, "external"

3

factors). Factors considered "internal" include: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241-44 (M.D. Fla. 2010). There is a "'strong presumption' in favor of finding a settlement fair." *Walker v. Kirkman Mgmt., LLC*, No. 20-1149, 2022 WL 1037369, at * 2 (M.D. Fla. Mar. 18, 2022) (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)). Additionally, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

### III. DISCUSSION

With the foregoing in mind, the Parties respectfully request that the Court scrutinize the Parties' proposed Settlement Agreement for fairness.

#### A. The Settlement Amount

Under the proposed Settlement Agreement, Defendants agree to pay Plaintiffs **Eriel Mason and Kyla S. Couthen** the total sum of $500.00 each, for a total of $1,000.00. As to Eriel Mason, $250.00 shall be allocated as alleged wages, including unpaid minimum wages and damages for alleged FLSA retaliation (less applicable

taxes and withholdings) and $250.00 shall be allocated as non-wage-based compensatory and liquidated damages and as additional consideration for the non-monetary terms and conditions set forth in the Settlement Agreement. *Id.* As to Kyla S. Couthen, $250.00 shall be allocated as alleged wages, including alleged minimum wages and damages for alleged FLSA retaliation (less applicable taxes and withholdings) and $250 shall be allocated as non-wage-based compensatory and liquidated damages and as additional consideration for the non-monetary terms and conditions set forth in the Settlement Agreement. *Id.* Notably, this settlement accounts for 100% of Plaintiff Couthen's alleged unpaid minimum wages ($100) and 100% of Plaintiff Couthen's alleged liquidated damages on the minimum wage claim ($100). Thus, there was no compromise of Plaintiff Couthen's potential FLSA minimum recovery (and Plaintiff Mason's FLSA minimum wage recover was dismissed on summary judgment).

Both Parties are represented by counsel and agree the negotiated terms of the Settlement Agreement are fair and equitable considering the strengths and weaknesses of the parties' respective positions. In this action, Plaintiffs calculated the amount allegedly owed as unpaid minimum wages and liquidated damages and proposed a settlement to Defendants in that amount, plus attorney's fees and costs. Defendants, rather than engage in litigation and in order to end the current litigation and any other litigation with Plaintiff, and on the verge of trial, agreed to pay 100% of Plaintiff's demand, in exchange for Defendants' receipt of certain non-monetary terms and

5

conditions. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Foods*, 679 F.2d at 1354. Courts are to review FLSA settlements with a strong presumption in favor of finding a settlement fair. *See Bonetti v. Embarq Management Co.,* 715 F.Supp.2d 1222, 1227 (M.D. Fla. 2009) ("[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").[1]

Having shown that the settlement amount is fair and reasonable, the Parties request that the Court address the specific terms of the Agreement.

### B. Attorneys' Fees

In an FLSA action, the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As part of the Agreement, separate and apart from the amount paid to Plaintiffs, Defendants will pay Plaintiffs' counsel $6.500.00 in attorney's fees and costs. This amount was negotiated separately from the amount paid to Plaintiffs for the FLSA claims, such that Plaintiffs represent that Plaintiffs agree the settlement amount was fair separate and apart from

---

[1] "A settlement is in large measure a reasoned choice of a certainty over a gamble, the certainty being the settlement and the gamble being the risk that comes with going to trial." *Paradise v. Wells*, 686 F. Supp. 1442, 1446 (M.D. Ala. 1988). It is not "whether the proposed consent decree is the best possible deal," but whether it is "at a minimum, fair, adequate and reasonable." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008).

consideration of the fees and costs paid to Plaintiffs' counsel.

In this action, Plaintiffs represent that number of hours expended (65) and the hourly rate ($450.00/hour), is reasonable based on the facts and circumstances of this case. Moreover, based on the Parties' representation that Plaintiffs' attorney's fee was agreed upon separately and without regard to the settlement amount paid to Plaintiffs, and given that the Settlement Agreement is otherwise reasonable on its face, and Plaintiffs received a settlement valued at 100% of Plaintiff's potential recovery, the Court should find Plaintiffs' recovery was not adversely affected by the amount of fees paid to Plaintiffs' attorney. Therefore, the Court may approve the Agreement without separately considering the reasonableness of the fee to be paid to Plaintiffs' counsel. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Even so, Plaintiffs request that the Court find the fees to be paid to Plaintiffs' counsel, including the number of hours expended (65) and the hourly rate ($450.00/hour), are reasonable under the circumstances presented. The Court may rely on its own experience in determining reasonableness of fees and should do so here. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)("The court, either trial or appellate, is itself an expert on the question [of reasonable hourly rates and hours expended] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

Accordingly, the Court should find the fees to be paid to Plaintiffs' counsel pursuant to the Settlement Agreement are reasonable and have not adversely affected the amounts paid to Plaintiffs under the Settlement Agreement.

### C. General Release

In this case, Defendants had no intention of settling the case and refused settlement for approximately 2½ years, and prevail on many claims on summary judgment, and was preparing to go to trial in November 2024. It was not until Plaintiffs made their most recent settlement demand, including a general release, confidentiality and a non-disparagement agreement, that Defendant agreed to settle the case. This case would not have settled without these non-monetary terms and conditions.

The Agreement also provides for additional consideration in the amount of $250.00 to each of the Plaintiffs in exchange for a release by Plaintiffs of any other claims Plaintiffs may have against Defendants. General releases in FLSA cases are sometimes viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351-52 (M.D. Fla. 2010) (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352; *see also Bradford v. Ancient City Grp. LLC*, No. 21-513, 2022 WL 549589, at *3 n.2 (M.D. Fla. Feb. 15, 2022) ("Some judges will not

approve an agreement to settle a FLSA claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined."); *King v. Premier Fire Alarms & Integration Sys., Installation Div., Inc.*, No. 20-60064, 2021 WL 7540777, at *1 (S.D. Fla. Dec. 17, 2021) (denying without prejudice joint motion to approve FLSA settlement where "the Agreement contains unbounded and pervasive release provisions" requiring the plaintiff to "release many known and unknown legal claims that have nothing apparent to do with the current FLSA dispute"). Nevertheless, "if a plaintiff is given compensation in addition to that to which he or she is entitled under the FLSA, then general releases can be permissible." *Herrera v. FS Invs. of America, Inc.*, No. 20-2465, 2021 WL 1602120, at *2 (M.D. Fla. Apr. 8, 2021).

The Parties submit that the terms of the general release are fair and reasonable and by no means gratuitous, valueless or one-sided. As an initial matter, Plaintiffs represent that there are no other pending claims against Defendants, Plaintiffs are unaware of any other potential claims against Defendants, the release was a significant factor in the Parties' negotiations, and the settlement amount is partly attributable to the inclusion of the releases to the extent that Defendants did not negotiate the amount in exchange for being provided non-monetary settlement terms, such as the release. In fact, from the Parties' perspective, the primary motivation to settle is a desire to completely sever the relationship with each other and end all litigation. If the Parties were able to retain claims and causes of action against each other, and potentially file

9

new claims and causes of action after the settlement, that would undermine a primary motivating factor to settle this case. Based on the foregoing, the Court should find that the general release does not undermine the fairness of the Agreement.

### D. No Further Employment Provision

The Agreement also contains a no further employment provision in which Plaintiffs waive any and all right to obtain or resume employment with Defendants. Some courts have held that "an agreement not to employ a plaintiff in the future plainly injures the plaintiff, and when the parties' briefing does not address the issue of additional consideration, courts cannot determine whether the inclusion of such provision in a settlement agreement represents a fair and reasonable resolution of the parties' FLSA dispute." *Duffey v. Surfside Coffee Co.*, No. 20-cv-501, 2022 WL 766904, at *4 (M.D. Fla. Jan. 1, 2022) (citation and internal quotation marks omitted). Such provisions, nonetheless, may be approved where supported by sufficient additional consideration. *Id.* Moreover, "[n]o reemployment clauses are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants." *Holmes v. Swissport Fueling, Inc.*, No. 16-cv-669, 2019 WL 1370542, at *6 (M.D. Fla. Mar. 11, 2019) (citation omitted); *see also Cruz v. Winter Garden Realty, LLC*, No. 12-cv-1098, 2013 U.S. Dist. LEXIS 126158, 2013 WL 4774617, at *3 (M.D. Fla. Sept. 4, 2013) ("Likewise, where a plaintiff indicates that she does not desire re-employment, the inclusion of a waiver of future employment does not render the settlement unfair.").

10

In this case, Plaintiffs fully understand the provision and its implications and have no interest in seeking future employment with Defendants. It is the Parties' desire to completely sever all relations and neither have any desire to resume the relationship or to work with the other again. Accordingly, the Court should find the inclusion of a waiver of future employment provision does not undermine the fairness of the Settlement Agreement under the circumstances presented.

### E. *Confidentiality Provision*

The Agreement contains a confidentiality provision in which Plaintiffs agree not to disclose or disseminate any such terms to any third person. Confidentiality provisions in FLSA settlement agreements are sometimes rejected by district courts because courts consider them to "thwart Congress's intent to ensure widespread compliance with the FLSA." *Herrera*, 2021 WL 1602120, at *2 (citing cases). Moreover, "[j]udicial records are presumed to be public documents because '[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.'" *Smith v. Target Corp.*, No. 21-80307-CIV, 2021 WL 5366876, at *1 (S.D. Fla. Nov. 18, 2021) (quoting *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)). Therefore, a confidentiality provision in an FLSA settlement agreement "both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA right." *Mingo v. Ironclad Projects, LLC*, No. 19-CIV-62202, 2021 WL 8894997 at *4 (S.D. Fla. Mar. 1, 2021) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)).

In this case, the parties agree that the confidentiality provision is fair and reasonable, and the parties agree that, despite the provision, the terms of their Settlement Agreement may remain available in the public record. Further, Plaintiffs fully understand the confidentiality requirements. Moreover, Plaintiffs have no intention of sharing the terms and conditions of his settlement with third parties, desires to keep the Settlement Agreement private and confidential for Plaintiffs' own purposes and is unaware of any other employee of Defendants who is similarly situated to Plaintiffs and may have potential claims against Defendants. Accordingly, under the circumstances presented here, the Court should find that the confidentiality provision does not undermine the fairness of the Agreement.

### F. Non-Disparagement Provision

The Agreement contains a non-disparagement provision where Plaintiffs agree that Plaintiffs will not disparage Defendants. The provision also provides that Defendants shall provide Plaintiffs' prospective employers with a neutral job reference. Courts that have analyzed the issue of non-disparagement clauses in FLSA settlement agreements have sometimes rejected them. *Dees v. Hydrady, Inc.*, No. 8:09-cv-1405-T-23TBM, 706 F. Supp. 2d 1227, 1242-43 (M.D. Fla. 2010); *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260 (M.D. Ala. 2003); *Hanson v. Wells Fargo Bank, N.A.*, No. 08-80182-Civ, 2009 U.S. Dist. LEXIS 49397, 2009 WL 1490582 (S. D. Fla. May 26, 2009). However, a number of cases have approved FLSA settlements in which the employee received additional consideration in exchange for non-cash concessions that went

beyond the release of the FLSA claims. *DeGraff v. SMA Behavioral Health Serv., Inc.*, 945 F. Supp. 2d 1324, 1329-30 (M.D. Fla. 2013); *Caamal v. Shelter Mortgage Co., LLC*, No. 6:13-cv-706-Orl-36KRS, 2013 U.S. Dist. LEXIS 138342, 2013 WL 5421955, *4 (M.D. Fla. Sept. 26, 2013).

In this case, the provision enabled the parties to reach swifter resolution. Additionally, the neutral reference provision provided a significant incentive for Plaintiffs to agree not to disparage Defendants. Further, Plaintiffs fully understand the provision and its implications and is in complete agreement with the provision. Accordingly, the Court should find that the inclusion of the non-disparagement provision does not undermine the fairness of the Agreement under the circumstances presented.

### G. *Retention of Jurisdiction*

Finally, the parties request the Court reserve jurisdiction for 45 days to enforce the terms of the Agreement. "To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough." *Anago Franchising, Inc. v. Shaz*, LLC, 677 F.3d 1272, 1279 (11th Cir. 2012). The request for the Court to retain jurisdiction is based on the deadline for payment of the settlement amount. Noting that the parties filed the Settlement Agreement in the Court's docket, the Court should find the request to reserve jurisdiction to enforce the terms of the Agreement is reasonable.

### IV. **CONCLUSION**

13

Considering the factors outlined in *Lynn's Food Stores*; the factual positions of the parties; the existence of documents supporting or corroborating the parties' positions; the strengths and weaknesses in the parties' respective positions; and the parties' desires to resolve their disputes without protracted litigation, the Parties respectfully request that the Court find the Settlement fair and reasonable, approve the Settlement Agreement, and dismiss this action with prejudice.

As set forth above, the settlement represents a genuine compromise of a bona fide dispute. Defendants, who deny liability, have agreed to pay Plaintiffs more than they believe Plaintiffs are due under the law. The Parties have agreed to settle because of reasonable strategic and financial considerations.

The settlement occurred in an adversarial context and that there are genuine coverage and computation issues in dispute. The Court should further find that the settlement reached by the parties represent a reasonable compromise by both sides and is fair and reasonable and that the amount claimed as payment for Plaintiffs' counsel's fees and costs is also reasonable.

Respectfully submitted,

| | |
|---|---|
| */s/Zandro E. Palma, Esq.* | */s/Todd W. Shulby, Esq.* |
| Zandro E. Palma, Esq. | Todd W. Shulby, Esq |
| ZANDRO E. PALMA, P.A. | TODD W. SHULBY, P.A. |
| 9100 S. Dadeland Blvd., Suite 1500 | 1792 Bell Tower Lane |
| Miami, Florida 33156 | Weston, Florida 33326 |
| Telephone: (305) 446-1500 | Telephone: (954) 530-2236 |
| Facsimile: (305) 446-1502 | Facsimile: (954) 530-6628 |
| E-mail: zep@thepalmalawgroup.com | E-mail: tshulby@shulbylaw.com |
| Florida Bar No.: 0024031 | Florida Bar No.: 068365 |
| *Counsel for Plaintiffs* | *Counsel for Defendants* |